UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSH THOMAS,

    Plaintiff,

    v.

MERCHANTS CREDIT ASSOCIATION,

    Defendant.

NO. C19-1173RSL

ORDER GRANTING IN PART
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

    This matter comes before the Court on "Defendant's Motion for Summary Judgment," Dkt. # 13, and "Defendant Merchants Credit Association's Motion[] for Sanctions Pursuant to Rule 11," Dkt. # 10. Plaintiff Josh Thomas, on behalf of himself and a class of similarly situated persons, alleges that defendant Merchants Credit Association made false and defamatory statements about him, violated the Washington Consumer Protection Act ("CPA"), and violated the Fair Credit Reporting Act ("FCRA") when it reported to credit reporting agencies that plaintiff was delinquent on two medical debts. Plaintiff also alleges that defendant violated the FCRA by failing to investigate the debts, failing to communicate with plaintiff, and failing to correct errors once they were brought to its attention. Two days after the case management order was issued, defendant moved for summary dismissal of all of plaintiff's claims.

    Summary judgment is appropriate when, viewing the facts in the light most favorable to

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018). Although the Court must reserve for the trier of fact genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable fact finder could return a verdict in its favor. *Singh v. Am. Honda Fin. Corp.*, 925 F.3d 1053, 1071 (9th Cir. 2019).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and taking the evidence in the light most favorable to plaintiff, the Court finds as follows:

## BACKGROUND

In September 2017, plaintiff received medical care at Virginia Mason Medical Center which resulted in two separate invoices. In March 2018, Virginia Mason assigned the unpaid balance of both debts to defendant for collection. Defendant sent plaintiff two letters, one for

each debt, indicating that it was attempting to collect amounts owed, providing an opportunity to dispute the debts, and requesting payment. Dkt. # 11-1 at 4 and 44. Plaintiff responded to the notices, indicating that he had insurance and that Virginia Mason had either failed to submit the claims for payment or had improperly submitted the claims. Plaintiff requested that defendant submit claims to his insurer before contacting him again. Dkt. # 11-1 at 6-7 and 46.

On April 28th and May 10th, defendant sent two letters, both acknowledging plaintiff's dispute regarding the second, larger debt (Account # 5445833 with a principal amount of $839.00). Dkt. # 11-1 at 18 and 50.[1] Both letters included the name and address of the creditor and a promise that the debt has been marked "disputed" if it were reported to a credit reporting agency. The second letter enclosed a Virginia Mason Statement of Clinical Services related to Merchants Account # 5425568, the smaller of the two debts: the statement and the letter to which it is attached do not reference the same debt. Dkt. # 11-1 at 19. Following Merchants' lead, plaintiff sent two responsive letters, both regarding the larger of the two debts, Account # 5445833. The first letter noted that defendant had not addressed the substance of his dispute: he reiterated that Virginia Mason had either failed to submit a claim to his insurance carrier or had improperly submitted the claim and that he would be willing to pay any unreimbursed amounts once the claim was adjusted. Dkt. # 11-1 at 52 and 58. The second response, mailed a few days later, keyed in on the Statement of Clinical Services defendant had forwarded with the May 10th letter, arguing that Virginia Mason had written off the debt and therefore no amounts were due. Plaintiff requested that defendant cease all collection efforts. Dkt. # 11-1 at 22.

Defendant claims that it reported both debts to Equifax as disputed on July 31, 2018. Dkt. # 11 at ¶¶ 8 and 22. The evidence offered in support of these assertions consists of entries in what appear to be Merchants' internal computerized records stating "07-31-18 05:52PM *crpt

---

[1] Contrary to the representations of Merchants' compliance officer, Alexandra Sandoval, at Dkt. # 11 at ¶ 6, the record contains no response to plaintiff's dispute regarding the first, smaller debt (Merchants Account # 5425568 with a principal amount of $304.01).

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT     -3-

account info disputed by consumer under FCRA . . . active bal $875 dt 1st delq 09262017" and "07-31-18 05:56PM *crpt account info disputed by consumer under FCRA . . . active bal $319 dt 1st delq 09262017." Dkt. # 11-1 at 66 and 26. While it is not entirely clear what information was sent to Equifax, shortly thereafter plaintiff received an alert from a credit monitoring service letting him know that Merchants had reported delinquent debts and that his credit rating had dropped. Plaintiff asserts that he "saw no indications that Defendant Merchants was reporting the debts as disputed." Dkt. # 22 at ¶ 12. Plaintiff sent another letter to defendant on August 5, 2018, indicating that the credit reports were erroneous, that Merchants had so far failed to address his dispute on the merits, and that the alleged debt was fraudulent. Dkt. # 22-1 at 2. Plaintiff also notified the credit reporting agencies that the debts were disputed. Dkt. # 22 at ¶ 14.

Six months later, Merchants' internal records entries, state "02-14-19h 11:27a *!ONLINE VERIF, A5425568 VERF BAL EFX 48 pnf PNF" and "02-14-19h 11:27a *!ONLINE VERIF, A 5445833 VERF ID EFX 48 pnf PNF." Dkt. # 11-1 at 13.[2] Merchants states that these entries show that plaintiff notified Equifax that the two debts were disputed on that date and that he claimed that he was "not liable." Merchants states that this was its first notice from Equifax that plaintiff had disputed the debts with the credit reporting agency: plaintiff challenges that assertion on the ground that he had disputed the debts with the credit reporting agencies in August 2018.[3]

Toward the end of March 2019, Merchants received a letter from plaintiff's counsel asserting violations of the FCRA and the CPA and notifying it of plaintiff's intent to initiate litigation based on a draft complaint attached to the letter unless they were able to settle the matter. Dkt. # 11-1 at 30-31. The next day, Merchants contacted Virginia Mason, requesting that

---

[2] The Court reserves ruling on plaintiff's hearsay objections.

[3] There is no indication in Merchants' computerized records of a report from the CRA in August 2018.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT          -4-

it re-bill plaintiff's insurance. Dkt. # 11-1 at 14. What its investigation showed is not clear from Merchants' cryptic computerized records. Taking the evidence in the light most favorable to plaintiff, it appears that Virginia Mason had billed Premera at the time of service, that the bill was paid and adjusted, and that a $30 deductible remained outstanding. *Id.*[4] There are also indications that Merchants was able to prevail upon Virginia Mason to submit the claim to Regence which responded by saying that there was a policy in effect at the time of service but that there was no coverage under the ID and group number provided. Dkt. # 11-1 at 15.

On April 5, 2019, Equifax again notified Merchants that plaintiff had disputed the debts. *Id.* Following attorney review of the file, Merchants sent a letter to plaintiff's counsel alerting him that the allegation in the draft complaint that Merchants had "completely ignored" his client was factually incorrect and that Merchants had handled plaintiff's dispute pursuant to company policy, including an investigation and the generation of an appropriate response to plaintiff. In particular, Merchants indicated that it had compared the insurance information plaintiff had provided to Merchants with that in the provider's files. Dkt. # 11-1 at 40.

## DISCUSSION

**A. Fair Credit Reporting Act, 15 U.S.C. § 1681s-2**

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Section 1681s-2 imposes two responsibilities on "furnishers" of credit information to credit reporting agencies ("CRAs") such as Equifax, TransUnion, and Experian. A furnisher must not only provide accurate information to the CRA in the first instance (15

---

[4] This is not the interpretation provided by Merchants, which interprets "THIS INS WAS BILLED IN 2017. $30 4.01 IS DEDUCTIBLE PER INSURANCE EOB" to mean "the insurance was billed in 2017 and that balance is insurance deductible." Dkt. # 11 at ¶ 12 and ¶ 26. Plaintiff will be permitted to take discovery regarding what Merchants did, what its investigation showed, and the meaning of this entry.

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT -5-

U.S.C. § 1681s-2(a)), it must also investigate and/or correct inaccurate information (15 U.S.C. § 1681s-2(b)). Plaintiff alleges that Merchants violated both duties.

### 1. Furnishing Inaccurate Information, 15 U.S.C. § 1681s-2(a)

Plaintiff alleges that Merchants provided inaccurate information to the CRAs. Pursuant to 15 U.S.C. § 1681s-2(d), however, only federal and state agencies can enforce the duties imposed under § 1681s-2(a). To the extent plaintiff is asserting a claim under 15 U.S.C. § 1681s-2(a), the claim fails as a matter of law.

### 2. Investigation and/or Correction, 15 U.S.C. § 1681s-2(b)

The duty to investigate and correct inaccurate information arises only after the furnisher receives notice of a dispute from the CRA. A complaint received directly from the consumer does not trigger the duty to investigate. *Gorman v. Wolpoff & Abramson, LLP.*, 584 F.3d 1147, 1154 (9th Cir. 2009) (the duties imposed under § 1681s-2(b) "arise only after the furnisher receives notice of dispute from the CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)."). After receiving notice of a dispute from a CRA, the furnisher of credit information must:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency. . .;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation . . . promptly –

    (i)   modify that item of information;
    (ii)  delete that item of information; or
    (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1). Although there is no explicit "reasonableness" requirement

enunciated in the text, the Ninth Circuit has determined that the term "investigation" "requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute" and that requiring some degree of careful inquiry is appropriate given the consumer protection goal of the FCRA. *Gorman*, 584 F.3d at 1155. The pertinent question is whether the furnisher's investigation was reasonable in light of the information it had regarding the nature of the consumer's dispute.

Plaintiff bears the burden of showing that defendant's investigation was unreasonable. *Gorman*, 584 F.3d at 1157. Although the FCRA requires the CRA to include in the notice of dispute "all relevant information regarding the dispute that the agency has received from the consumer . . ." (15 U.S.C. § 1681i(a)(2)(A)), the CRA in this case apparently utilized an electronic form of communication that, to the uninitiated eye, conveyed little more than a need to verify the balance of Account # 5425568 and plaintiff's identification with regards to Account # 5445833. Dkt. # 11-1 at 13. If this were all the information Merchants had regarding plaintiff's dispute, a simple review of documents to confirm the identity of the patient and the outstanding balance might constitute a reasonable investigation. The CRA's notice was not the only information available to Merchants, however. Plaintiff had been communicating with Merchants for months regarding these debts, asserting that he had insurance but that Virginia Mason either had not submitted a claim or had done so incorrectly. Plaintiff specifically requested that the claims be submitted to his insurer before Merchants attempted to collect from plaintiff. He also expressed confusion regarding the amounts allegedly owed, Virginia Mason's apparent write-off of the debts, and the services provided. All of this information was in Merchant's possession when it received notice from the CRA that the debts were disputed.

Merchants argues that its investigation and response to the February 14, 2019, notice of dispute from Equifax was reasonable. There is a factual issue regarding the adequacy of Merchants' investigation. Assuming, for purposes of this motion, that the February 14, 2019,

ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT        -7-

communication was the first notice Equifax provided of the dispute, Merchants failed to "complete all investigations, reviews, and reports required under" § 1681s-2(b)(1) within the thirty-day period provided by § 1681i(a)(1), in violation of § 1681s-2(b)(2). In fact, it appears that Merchants did nothing in response to the CRA's notice until it received a letter from plaintiff's counsel on March 25, 2019. What Merchants did thereafter is unclear from the current record. Ms. Sandoval states that Virginia Mason represented to Merchants that insurance had been billed at the time of service and that the amounts owing on the accounts are insurance deductibles. Dkt. # 11 at ¶¶ 12 and 26. The computerized records cited in support of this statement suggests that the insurance deductible was $30, far less than either of the debts Merchants had reported. There is no indication that Merchants corrected the information it furnished Equifax if, indeed, the outstanding balance on the debt was only $30. The Court cannot determine on the current record that, as a matter of law, Merchants' investigation was reasonable or that it satisfied its obligations under § 1681s-2(b). The Court declines to speculate whether potential failures to comply with the requirements of the FCRA were willful or negligent.

**B. Defamation**

The FCRA contains two preemption provisions. Section 1681h(e) generally preempts defamation actions against persons who provide certain types of information to a consumer reporting agency except where the false information is furnished with malice or willful intent to injure the consumer. Section 1681t(b)(1)(F) preempts all state requirements or prohibitions (with two exceptions for Massachusetts and California laws not at issue here) related to the responsibilities of persons who furnish information to consumer reporting agencies under § 1681s-2. The interplay between these two preemption provisions has caused confusion. Some courts have concluded that § 1681t(b)(1)(F) preempts all state law causes of action asserted against persons who provide information to CRAs despite the more specific authorization for

defamation suits involving willfulness or malice under § 1681h(e). *Buraye v. Equifax*, 625 F. Supp.2d 894, 900 (C.D. Cal. 2008). Some courts note that Congress amended, rather than repealed, § 1681h(e) when it added § 1681t to the FCRA and therefore give meaning to both sections by interpreting defamation and the other causes of action mentioned in § 1681h(e) as exceptions to the broader immunity provided to furnishers of information by § 1681t(b)(1)(F). *Loomis v. U.S. Bank Home Mortg.*, 912 F. Supp.2d 848, 858-59 (D. Ariz. 2012). Others have recognized a temporal divide, finding that § 1681(b)(1)(F) applies only to causes of action predicated on a furnisher's responses to notice of a dispute, but that causes of action arising before that point in time are governed by § 1681h(e). *Kane v. Guar. Residential Lending, Inc.*, 2005 WL 1153623, at *8 (E.D.N.Y. May 16, 2005). The Ninth Circuit, for its part, noted the tension between the two sections and simply declined to decide the matter, instead evaluating whether plaintiff had shown willfulness or malice and finding that the state law claim failed in any case. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1166-67 (9th Cir. 2009).

The language of the statute and its legislative history suggests that Congress did not intend to repeal § 1681h(e) *sub silentio* when it added § 1681t to the FCRA. Congress had a clear opportunity to delete § 1681h(e) if it had wanted to: it did not, and the provisions of the two sections are sufficiently distinct that they can be interpreted to apply to different conduct and claims. As the Fourth Circuit has pointed out, § 1681h(e) applies only where a defamation claim is "based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report." *Ross v. F.D.I.C.*, 625 F.3d 808, 814 (4th Cir. 2010). Plaintiff's claims do not arise out of Merchants' disclosures to consumers (§ 1681g and h) or Merchants' use or disclosure of information contained in a consumer report (§ 1681m and h(e)). Thus, plaintiff's defamation claim does not fall within the scope of § 1681h(e), and the only preemption provision that applies is § 1681t(b)(1)(F). Because plaintiff's defamation claim is a requirement or prohibition imposed under state law with respect

to subject matter regulated under Section 1681s-2, his claim "runs into the teeth of the FCRA preemption provision" and is barred. *Ross*, 625 F.3d at 813.

**C. Class Allegations**

Plaintiff has not responded to Merchants' argument regarding his inability to certify a class given the facts of this case.

**D. Motion for Sanctions Under Rule 11**

Merchants' motion for sanctions under Rule 11 was procedurally improper insofar as it was emailed to plaintiff's counsel twenty-one days before filing rather than "served under Rule 5" as required by subsection (c)(2) of the Rule. Having reviewed the materials submitted by the parties with regards to both the summary judgment motion and the motion for sanctions, it is clear that plaintiff's class allegations were frivolous, unreasonable, and asserted for an improper purpose, but he has now withdrawn those allegations and abandoned all class claims. No sanctions are appropriate given defendant's procedural failure.

For all of the foregoing reasons, plaintiff's claim under 15 U.S.C. § 1681s-2(a), his claims for defamation and violations of the CPA,[5] and his class allegations fail as a matter of law. Merchants' motion for summary judgment regarding plaintiff's claim under 15 U.S.C. § 1681s-2(b)(1) is DENIED.

Dated this 25th day of March, 2020.

*[signature: MW S Lasnik]*
Robert S. Lasnik
United States District Judge

---

[5] Plaintiff concedes that his claim under the Washington Consumer Protection Act is preempted by the FCRA. Dkt. # 21 at 16 n. 49.